# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**Syntax-Brillian Corporation,** *et al.,*<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 08-11407 (BLS)<br><br>(Jointly Administered) |
| **SB Liquidation Trust,**<br><br>Plaintiff,<br><br>v.<br><br>**Preferred Bank,**<br><br>Defendant. | Adv. No. 10-51389<br><br>Related to Adv. Docket Nos. 38, 40, 45 & 57 |

PEPPER HAMILTON LLP
David M. Fournier
Evelyn J. Meltzer
John H. Schanne
Hercules Plaza
1313 Market Street
Suite 5100
Wilmington, DE 19899

-and-

DLA PIPER LLP
Stuart M. Brown
R. Craig Martin
919 N. Market Street
15th Floor
Wilmington, DE 19801

-and-

DIAMOND McCARTHY LLP

Eric D. Madden

Michael J. Yoder

909 Fannin Street

Suite 1500

Houston, TX 77010

*Counsel and Special Counsel,*
*respectively, for Plaintiff SB*
*Liquidation Trust*

FRANDZEL ROBINS

BLOOM & CSATO, L.C.

Thomas M. Robins III

Kenneth Russak

6500 Wilshire Blvd.

17th Floor

Los Angeles, CA 90048

*Counsel for Defendant*
*Preferred Bank*

# OPINION[1]

　　Before the Court is a motion (the "Motion") [Adv. Docket No. 38] filed by SB Liquidation Trust (the "Trust" or "Plaintiff") for relief from an order granting Preferred Bank's (the "Bank" or "Defendant") motion to dismiss the complaint (the "Complaint") [Adv. Docket No. 1]. The Trust, as successor-in-interest to Syntax-Brillian Corporation and its affiliated debtors (the "Debtors" or "SBC"), initiated this adversary proceeding against the Bank to recover damages allegedly owed to the Debtors. In its Complaint, the Trust alleged that the Bank aided and abetted the Debtors' officers and directors in breaching their fiduciary duties and perpetuating fraud. Further, the Complaint alleged avoidance actions for purportedly fraudulent transfers received by the Bank. The Bank moved to dismiss the complaint in its entirety pursuant to Rule 12(b)(6).[2] The Court granted the Defendant's motion to dismiss by Order [Adv. Docket No. 31] and Opinion [Adv. Docket No. 30] dated July 25, 2011.[3] By this Motion, the Trust has moved for relief from the Court's previous order pursuant to Rule 60(b).[4] The Trust argues that newly discovered evidence warrants relief under

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c).

[2] Fed. R. Civ. P. 12(b)(6) is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012.

[3] *SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, Ch. 11 Case No. 08-11407 (BLS), Adv. No. 10-51389, 2011 WL 3101809 (Bankr. D. Del. July 25, 2011).

[4] Fed. R. Civ. P. 60(b) is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 9024.

Rules 60(b)(2) and 60(b)(6).  The Trust also argues that the Court should grant leave to amend its complaint to incorporate the newly discovered evidence.

However, the Bank argues that the Court lacks jurisdiction because the Plaintiff timely appealed the decision.  The Bank then argues that the Motion fails to satisfy the requirements of both Rules 60(b)(2) and 60(b)(6).  For the reasons that follow, the Court will deny Plaintiff's Motion.

# I. BACKGROUND

## A. Summarized Background From Previous Opinion[5]

The Debtors' primary business was to manufacture and distribute high-definition televisions ("HD TVs").  In early 2004, Syntax entered into a manufacturing agreement with Taiwan Kolin Company, Ltd. ("Kolin").  Syntax and Kolin also entered into various agreements including a research and development agreement, a volume incentive agreement, a price protection agreement, and a four-party factoring agreement with CIT Commercial Services, Inc. ("CIT") and Hsin Chu International Bank ("HIB") that involved assigning accounts receivable from Syntax to CIT and then to HIB on behalf of Kolin.[6]

In November of 2004, Syntax entered into a loan agreement with the Bank for $3.75 million.[7]  The Bank provided letters of credit and trust receipts to finance Syntax's acquisition of imported inventory from Kolin.  Syntax repaid the trust receipts to the Bank with the proceeds that CIT collected from Syntax's domestic accounts receivable pursuant to a multi-party factoring agreement.  As a result of Kolin's over-charging, the actual cash was insufficient to cover the trust receipts, and to alleviate the problem of increasing trust receipt debt,

---

[5] The Court only summarizes the background of this adversary proceeding. For a more comprehensive review of the background, *see In re Syntax-Brillian Corp.*, 2011 WL 3101809, at *1-4.

[6] There are a number of important players involved in this alleged complex fraud.  James Li was on SBC's Board of Directors and was also at times its President, Chief Operating Officer, and Chief Executive Officer.  Thomas Chow was a Director of SBC, its Chief Financial Officer, and Chief Procurement Officer.  Christopher Liu was Kolin's Chairman of the Board and a Director of SBC.  Roger Kao was Kolin's Vice President and served as a Director of Syntax, and Alice Phang was SBC's Controller.  Li, Chow, Liu, Kao, and Phang, referred to by the Trust as the "Kolin Faction," will be referred to herein as the "Insiders."

[7] *See In re Syntax-Brillian Corp.*, 2011 WL 3101809, at *2.

Syntax and the Bank modified the terms of the loan agreement many times. Each modification increased the principal amount of the loan, up to a total of $20 million in September 2005, and extended the maturity date as well as other terms of the loan agreement. Additionally, pursuant to the factoring agreement mentioned above, the proceeds of the trust receipts were transferred from CIT to the Bank's control account under the following terms:

> (1) 25% of cash proceeds collected by CIT would pay down existing trust receipt advances on a first in, first out basis; (2) 60% of such cash proceeds would pay down Syntax's working capital line with the Bank, and upon Syntax's request, Syntax's accounts payable to Kolin for the same amount; and (3) the balance of such cash proceeds would go to Syntax's operating account to cover operating expenses.[8]

In 2005, Syntax Groups Corporation and Brillian Corporation entered into a merger agreement and formed SBC. After the merger, Syntax and the Bank modified the loan agreement four more times, increasing the total commitment to $55 million in February 2007, extending the maturity date of the loan, eliminating the trust receipt financing, and adding SBC as a party to the financing agreement.[9]

Beginning in December 2005, the Bank advanced additional funds to SBC that were immediately transferred to an account maintained by Kolin at the Bank. The initial advance of $3.8 million was secured by a checking account held by Kolin. This loan, meant to be temporary, was extended many times. In connection with the loan and its extensions, funds were backdated on numerous occasions.[10]

Beginning in June of 2006, Kolin issued approximately $200 million in invoices relating to the sales of HD TVs (the "Kolin Invoices") to two of SBC's main distributors, South China House of

---

[8] *Id.*

[9] *Id.*

[10] In the Complaint, the Plaintiff alleges several incidents of a "highly irregular" banking relationship where Phanglin Lin, Senior Vice President and Manager Corporate Lending at the Bank, favored James Li and Thomas Chow by advancing Li cash before execution of loan documents to personal accounts, inviting Li and Chow to a VIP party, and gifting a wine cooler to Li. *See* Compl. ¶¶ 248, 249; *In re Syntax-Brillian Corp.*, 2011 WL 3101809, at *3

Technology, Ltd. ("SCHOT") and Olevia Far East ("OFE").[11]  These invoices increased SBC's accounts receivable and sales over $300 million.  In 2007, the Kolin Invoices increased to account for over two-thirds of SBC's unassigned accounts receivable.[12]  As the accounts receivable grew, the price protection provided by Kolin steadily declined.  The Plaintiff alleged in the Complaint that the terms of SBC's business relationships with SCHOT and OFE were extraordinary, including extended payment terms and abnormally high resale margins.[13]

By late 2007, SCHOT and OFE's resale of SBC's HD TVs were largely unsuccessful.[14]  At the direction of James Li, SBC entered into two agreements with SCHOT and OFE.  The first agreement granted OFE an exclusive license to sell Olevia HD TVs in Hong Kong and China, and in exchange, SBC agreed to pay OFE a three-percent royalty fee on each HD TV sold while SCHOT provided the collection services for an additional fee.[15]  The second agreement allowed SCHOT and OFE to return unsold HD TVs to either SBC or Kolin and receive a credit against their outstanding liability to SBC.  SBC credited SCHOT and OFE for approximately 25,000 HD TVs and the Plaintiff had alleged that the remaining HD TVs may have never existed.[16]

In a last attempt to keep the company from going under due to decreasing sales, SBC entered into a credit and guaranty agreement with Silver Point Finance, LLC ("Silver Point") that provided a term loan of $150 million and a revolving line of credit of $100 million.  Due to the decreasing SCHOT and OFE accounts receivable, SBC was almost immediately in default of certain liquidity obligations under the credit

---

[11] *In re Syntax-Brillian Corp.*, 2011 WL 3101809, at *3.

[12] *Id.*

[13] *See id.*

[14] *See id.*

[15] *See id.*

[16] The Court pointed out the abnormal nature of these transactions:

> The $60 million rebate provided by Kolin to SBC for the related fiscal period (fourth quarter of 2007) appears to compensate for the decreased SCHOT and OFE sales and the effects of SBC's royalty and inventory return agreements with SCHOT and OFE.  This quarterly rebate was larger than the cumulative amount of rebates Kolin had provided to SBC in any given fiscal year.

*Id.* at *4 n.6.

and guaranty agreement.[17]    The default triggered increased interest rates and penalty fees, which allowed Silver Point to assert control over SBC's cash flow pursuant to the agreement.    Kolin then ceased providing SBC with the price protection rebates and asserted that it had received no payments on account of certain tooling invoices.  Finally, SCHOT and OFE asserted that they owed nothing to SBC.[18]

Amidst the liquidity crisis and failure of many of the agreements and arrangements described above, the Debtors filed for relief under Chapter 11 of the Bankruptcy Code on July 8, 2008.  Almost two years later, the Trust filed its 94-page Complaint against the Bank.  The Trust alleged that the Bank contributed to the collapse of the Debtors because of its willingness to advance funds to SBC that were immediately transferred to Kolin, thereby diverting hundreds of millions of dollars away from creditors and SBC.  In Count I, the Trust alleged that the Bank aided and abetted the Insiders by knowingly assisting them in breaching their fiduciary duties through facilitating circular wire transfers between SBC, Kolin, and SCHOT.    In Count II, the Trust alleged that the Bank aided and abetted the Insiders in perpetrating fraud.  The next four counts alleged avoidance actions based on actual intent to defraud under § 548(a)(1)(A) and constructively fraudulent transfers under § 548(a)(1)(B).  Finally, Count VII asked the Court to allow recovery for avoidable fraudulent transfers under § 550.  The Defendant filed a motion to dismiss the Complaint.

## B. The Court's Previous Holding

On July 25, 2011, the Court found that certain California statutes, analyzed in the Court's Opinion,[19] shielded the Bank from liability for aiding and abetting and therefore, disposed of Counts I and II. Additionally, as a threshold matter to Counts III-VII, the Court found that the Trust failed to adequately allege that the Bank knew or should have known of the allegedly wrongful purpose of the numerous transactions.  Therefore, the "collapsing transaction" argument, upon which the Trust based the requested relief, failed and the Court dismissed the Complaint in its entirety.

The Court's decision has been appealed to the District Court. Additionally, counsel for the Trust certified a question of law to the

---

[17] *Id.* at *4.

[18] *Id.*

[19] *SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, Ch. 11 Case No. 08-11407 (BLS), Adv. No. 10-51389, 2011 WL 3101809 (Bankr. D. Del. July 25, 2011).

Third Circuit, which was granted.  The question is "whether a party from whom recovery is sought under Chapter 5 of the Bankruptcy Code necessarily must have actual or constructive knowledge of the fraudulent nature of interrelated, component transactions in order for those transactions to be 'collapsed' and assessed as one, integrated transaction for purposes of avoidance analysis?"[20]

## C. Newly Discovered Evidence

The United States Securities and Exchange Commission (the "SEC") filed a complaint[21] in the United States District Court for the District of Arizona against James Li, Thomas Chow, Roger Kao, Christopher Liu, and Wayne Pratt.[22]  The Trust alleges that the SEC filing led them to new evidence that significantly altered the Trust's understanding of the fraudulent scheme.  The SEC allegations, which the Trust incorporates into its brief, implicated the involvement of Brian Pak, a graphics designer at SBC, whose full involvement in the fraud was not previously known to the Trust.[23]

Through the SEC investigation and Pak's statements, the Trust discovered that SBC sold its HD TVs at a loss, *i.e.*, it was under-cost selling, which caused significant losses.[24]  Because of the under-cost selling, the Trust now understands the true extent and nature of the fraud perpetuated by the Insiders.

The Trust alleges that the Insiders generated the Kolin Invoices to hide the losses from its financial statements.  The Kolin Invoices are now believed to be entirely fake and were fabricated at James Li's direction by Pak.[25]  To cover up the unintended accounting problem of decreasing accounts payable due to the fake Kolin Invoices, the Insiders created fake sales to SCHOT, fabricated by Pak.  SBC recorded over

---

[20] Adv. Docket No. 67.

[21] *SEC v. Li*, No. CV-11-1712-PHX-SRB (D. Ariz. August 30, 2011) [Adv. Docket No. 39 Ex. C].

[22] Wayne Pratt was Syntax's Chief Financial Officer.

[23] *See* Pl.'s Proposed First Am. Compl. ("FAC") ¶¶ 9, 54 [Adv. Docket No. 39 Ex. A].

[24] *See, e.g.*, FAC ¶ 1.

[25] *Compare* FAC ¶ 9 ("[T]he Kolin Faction generated fake 'credit memos'….") *and* FAC ¶ 53 (characterizing the Kolin Invoices as "entirely bogus transactions") *with* Compl. ¶¶ 9, 47 (stating that the Kolin Invoices were fraudulent).

$400 million in fake sales to SCHOT and OFE.[26]   No cash changed hands because the sales were false and this, in turn, increased SBC's accounts receivable, creating another accounting problem.  The Insiders fixed the problem by funneling money through circular wire payments from Kolin to SCHOT, from SCHOT to SBC, and then from SBC back to Kolin.[27]   The circular wire transfers had the unintended accounting effect of decreasing SBC's accounts payable.  To fix this new problem, the Insiders created completely fake "tooling" charges, which were fabricated by Pak at Li's direction.[28]  These "tooling" charges offset the accounting consequences of the fake Kolin Invoices and the circular wire transfers.  Because of these discoveries, the Trust alleges that it now understands the fraud to be "far greater in scope and more harmful to SBC than initially understood" and alleged by the Trust in the Complaint.[29]

## D. This Action

        One year to the day from the Court's opinion, the Trust timely[30] filed this Motion for relief from the Court's order under Federal Rule of

---

[26] *Compare* FAC ¶¶ 11, 12, 59 (characterizing the SCHOT sales as entirely fake) *with* Compl. ¶¶ 9, 47 (stating that SBC ultimately recorded around $300 million in mostly fictitious sales to SCHOT and OFE).

[27] *Compare* FAC ¶¶ 13, 63 (describing in detail how the circular wire transfers operated) *with* Compl. ¶¶ 11, 48 (discussing how the circular wire transfers fit into the fraud).

[28] *Compare* FAC ¶¶ 14, 65 (describing in detail how the "tooling" charges functioned and its effect on SBC's financial accounting) *with* Compl. ¶¶ 48, 49, 50 (discussing the "tooling"charges). *See also* Pl.'s Op. Br. at 8 [Adv. Docket No. 40] ("Most, if not all, of the[] tooling invoices were fabricated by a Syntax employee at Li's direction.") (citing Compl. ¶ 45, *SEC v. Li*, No. CV-11-1712-PHX-SRB (D. Ariz. August 30, 2011)).

[29] Pl.'s Op. Br. at 9.  It is worth noting here that not once in the "Post-Judgment Developments and New Evidence" section of the Plaintiff's opening brief did the Trust mention the Bank or any new evidence or allegations that relate specifically to the Bank.  *Id.* at 7-9.  In that vein, the SEC's complaint did not mention the Bank or any of its employees, let alone implicate the Bank in any wrongdoing.  *See generally* Compl. ¶¶ 18-59, *SEC v. Li*, No. CV-11-1712-PHX-SRB (D. Ariz. August 30, 2011).

[30] A motion under Rule 60(b) must be made within a reasonable time and no more than one year after the entry of the judgment.  Fed. R. Civ. P. 60(c)(1).  Further, Rule 6 states that when the period is stated in days or a longer unit of time, exclude the day of the event that triggers the period, and include the last day of the period.  Fed. R. Civ. P. 6(a)(1).  Because the Motion was made

Civil Procedure 60(b).[31]  The Trust first argues that newly discovered evidence warrants relief under Rules 60(b)(2) and 60(b)(6).  Then, the Trust argues that it should be allowed to file an amended complaint to incorporate the new evidence.

The Bank filed its answering brief in opposition to the Motion on August 17, 2012.[32]  The Trust then filed its reply on August 31, 2012.[33]  The Court held oral arguments on October 25, 2012 and closing arguments on December 11, 2012.  The matter has been fully briefed and argued, and is ripe for decision.

## II. PARTIES' POSITIONS

The Trust first argues that the newly discovered evidence described above warrants relief under Rule 60(b)(2).  It argues that the "newly discovered evidence" is material, in particular the Bank's alleged knowledge of SBC's under-cost selling.  This new evidence is alleged to have fundamentally changed the Trust's understanding of the intent and motive behind the Insiders' fraudulent scheme.  Further, the Trust states that it could not have discovered the new evidence through reasonable diligence because the new evidence came from investigations spurred on by the SEC complaint, which was not filed until after the Court's previous ruling.  The Trust also states that it had no way of knowing that the Kolin Invoices were forged.  Finally, the Trust asserts that this new evidence would have changed the result in the Court's previous opinion.  With the new evidence, the Trust alleges that the avoidance action would succeed because the facts give rise to "actual intent" in the context of fraudulent transfers.  Regardless of the "collapsing transaction" argument,[34] it argues that the Trust has adequately established the Bank's actual knowledge as a matter of law in connection with Ponzi schemes and the many "badges of fraud" surrounding these transactions.

In the alternative, the Trust argues that relief under Rule 60(b)(6) is warranted in this case because of the complex fraud involved.  The Trust alleges a significant disadvantage because a liquidating trustee, as

exactly one year after the Court's order, according to Rule 6, the Motion is less than one year and it is considered timely.
[31] Adv. Docket No. 38.
[32] Adv. Docket No. 45.
[33] Adv. Docket No. 57.
[34] The Trust certified for appeal to the Third Circuit the issue of the "collapsing transaction" argument relied upon in the Court's opinion.  *See supra* Part I.B.

opposed to a regular plaintiff, has limited resources and lacks personal knowledge of the facts from the outset of the case. Because of its status as liquidating trustee, the Trust argues that the Court should give it the benefit of the doubt. Finally, the Trust asks this Court to allow leave to amend its Complaint to incorporate the new evidence.

In response, the Bank argues that the Motion under Rule 60(b)(2) is meritless for a two reasons. First, it argues that the "new evidence" was in the Trust's possession the entire time and therefore, cannot be characterized as "new." The Bank then argues that the "new evidence" would not have changed the outcome because the evidence does not show the Bank's "actual knowledge" of the fraud.

The Bank further responds that the Trust's Rule 60(b)(6) arguments are equally meritless. The Bank argues that this relief is extraordinary and the Trust points to no authority that would warrant such relief. Finally, the Bank states that allowing the Trust leave to amend would be improper given the Court's limited jurisdiction in this proceeding.

## III. JURISDICTION & VENUE

As a threshold matter, the Court has jurisdiction, albeit limited, to rule on the Motion. The parties have argued about the extent of the Court's jurisdiction to rule, but the law in this respect is clear.[35]

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *see also Thomas v. Northeastern Univ.*, 470 F. App'x 70, 71 (3d Cir. 2012) (stating that a timely appeal divests jurisdiction of the lower court). Except in limited circumstances, the lower court has no jurisdiction to act. *See Venen v. Sweet*, 758 F.2d 117, 120 n.2 (3d Cir. 1985) (providing a list of some, but not all, of the limited circumstances that a court may act). The purpose of this judge-made rule is to "prevent[] confusion and inefficiency" that would result if two courts were considering the same issues simultaneously. *Id.* at 121.

Pursuant to the Third Circuit's ruling in *Venen*, the lower court has the power to entertain and deny a Rule 60(b) motion after an appeal is timely filed. *Id.* at 123. The procedure for dealing with a Rule 60(b) motion after an appeal has been filed is to file the motion in the lower

---

[35] It is equally clear that venue is proper pursuant to §§ 28 U.S.C. 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

court and if that court intends to grant the motion, it should certify its intention to the appellate court. *Id.* If the matter is thereupon remanded by the appellate court, only then will the lower court have the power to grant the motion. *Id.* Therefore, it is clear that the Court may only deny the Motion or certify its inclination to grant the Motion to the District Court. It follows that this Court does not have jurisdiction to grant leave to amend the Complaint.

# IV. LEGAL ANALYSIS

## A. Rule 60(b) Standard

A Rule 60(b) motion is an extraordinary remedy only appropriate where rare circumstances are present. *See, e.g., Pilsco v. Union R.R. Co.*, 379 F.2d 15, 16 (3d Cir. 1967). "The framers of Rule 60(b) set a higher value on the social interest in the finality of litigation." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 682 (7th Cir. 1983). Courts have stated that the movant "bears a heavy burden." *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (citation omitted). Further, the grounds for granting relief under Rule 60(b) include "the need to correct clear error of law or to prevent manifest injustice." *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 15 F. Supp. 2d 406, 409 (D. Del. 1998).

Federal Rule of Civil Procedure Rule 60(b) provides six grounds that, on a motion, the Court may relieve a party from a final judgment or order. All Rule 60(b) motions must be filed "within a reasonable time," and for 60(b)(1), (2), and (3), the motion must be filed not more than one year from the entry of the order. Fed. R. Civ. P. 60(c).

Rule 60(b)(2) provides a party with relief if there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Rule 59 and Rule 60(b)(2) share the same standard for granting relief based on "newly discovered evidence." *See Compass Tech., Inc. v. Tseng Labs., Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995). The movant must show that the evidence (1) is material and not merely cumulative, (2) could not have been discovered before trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome of the trial. *Id.* However, a showing of "potential significance of the new evidence" is not enough. *See Pilsco*, 379 F.2d at 16. Rather, relief from order will only be granted if the evidence would have changed the result. *See Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 643 (S.D. Tex. 2009) (citation omitted). Finally, the case law teaches that "a party cannot show due diligence if the newly

discovered evidence was available to that party during the proceeding." *Id.* at 646. Newly discovered evidence has been described as "evidence 'of which the aggrieved party was excusably ignorant' at the time of trial." *Pilsco*, 379 F.2d at 16 (citation omitted). "It is clear that if the evidence 'was in the possession of the party before the judgment was rendered it is not newly discovered and does not entitle the party to relief.'" *Procter & Gamble Co.*, 15 F. Supp. 2d at 415 (citation omitted); *see also Atkinson v. Prudential Prop. Co.*, 43 F.3d 367, 371 n.3 (8th Cir. 1994) ("Where a party had possession of the evidence the entire time, the party's later 'discovery' of the evidence is generally not sufficient to support a motion under Rule 60(b)(2)."); *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987) (holding that evidence cannot be newly discovered if it was in possession of the party throughout the trial).

Rule 60(b)(6) provides a party relief for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief under this catch-all provision is an especially extraordinary remedy. *Merit Ins. Co.*, 714 F.2d at 682; *see also Reform Party of Allegheny County v. Allegheny County Dep't of Elections*, 174 F.3d 305, 311 (3d Cir. 1999) (holding that relief is only available in extraordinary circumstances). It has been characterized as "a grand reservoir of equitable power to do justice in a particular case." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005). Further, relief under Rule 60(b)(6) and sections (1)-(5) are mutually exclusive. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). This means that the reasons justifying relief under Rule 60(b)(2) cannot be the basis for relief under 60(b)(6). *See, e.g., Hechinger Liquidation Trust v. Spectrum Group, Inc. (In re Hechinger Inv. Co. of Delaware, Inc.)*, 309 B.R. 706, 709 (Bankr. D. Del. 2004).

## B. Application of Rule 60(b)(2)

### 1. Reasonable Diligence

To obtain relief from an order pursuant to Rule 60(b)(2), the movant must show that the evidence could not have been discovered in time to move for a new trial under Rule 59(b) through the exercise of reasonable diligence. The movant cannot show reasonable diligence if the "new evidence" was in its possession throughout the relevant time period. *See Atkinson v. Prudential Prop. Co.*, 43 F.3d 367, 371 n.3 (8th Cir. 1994); *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987). The Trust's "newly discovered evidence" may have technically been in its possession throughout the relevant time period because the Trust had access to SBC's electronic archives that stored the Pak e-mails; however,

the Court declines to base its holding on this ground and finds that the "newly discovered evidence" could not have reasonably been discovered by the Trust in time to move for a new trial.

This case involved discovery in the form of electronically stored information ("ESI").  It is undisputed that there were several terabytes of ESI that the Trust needed to sift through to uncover this alleged complex fraud.[36]  The Bank cites *Halliburton* for the proposition that "possession" is outcome determinative here.  *See Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 643 (S.D. Tex. 2009) (stating that discovery involved over one million pages of documents).  However, in the Third Circuit, the movant can show reasonable diligence if the aggrieved party is "excusably ignorant" of the new information at the time of trial.  *Pilsco v. Union R.R. Co.*, 379 F.2d 15, 16 (3d Cir. 1967) (citation omitted).  Such a determination proceeds on a case-by-case basis, requiring scrutiny of the peculiar facts and circumstances of each case.  Although the "newly discovered evidence" here may have been in the Trust's possession, the Trust alleges that it had no indication that a graphics designer named Brian Pak was involved in the fraud until after the SEC complaint was filed.  Thus, as a practical matter, the Trust plausibly contends that it had no way to know relevant search terms within the ESI to locate or retrieve the "newly discovered evidence."  Therefore, the Court finds that the Trust was excusably ignorant of the newly discovered evidence and it exercised reasonable diligence.

### 2. Materiality

Under Rule 60(b)(2), the "newly discovered evidence" must also be material and not cumulative.  Potential significance is not enough and the movant must show that the new evidence would have changed the result.

Here, the Trust fails to show that the "new evidence" would have changed the result.  The Trust's new information stems from the SEC investigation and complaint.  As previously stated, the SEC's complaint does not mention the Bank nor does it implicate the Bank in any wrongdoing.  The statements made by Brian Pak led the Trust to understand the mechanics of the fraud in greater detail, but this new understanding fails to implicate the Bank in any new way.

In the Court's previous Opinion, the Court summarized the Trust's arguments for Count I:

---

[36] The Trust alleges that much of this data was in the form of a "smattering of e-mails."  Pl.'s Reply Br. at 10 n.26 [Adv. Docket No. 57].

> The Trust argues that the Bank's knowledge of the Insiders' misconduct is evidenced by the allegedly "highly irregular" relationship between the Bank and the Insiders, characterized by "special treatment," frequent amendments to Loan Agreement, sloppy documentation involving backdating, and numerous advances of funds made without obtaining customary authorization. Specifically, the Trust alleges that by virtue of its role as lender, the Bank knew that the relationship between SBC and Kolin was "less than arms' length," that Kolin was systematically overcharging SBC for the HD TVs it was importing, and that the Insiders were manipulating the majority of the transactions between SBC and Kolin for Kolin's benefit.

*SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, Ch. 11 Case No. 08-11407 (BLS), Adv. No. 10-51389, 2011 WL 3101809, at *8 (Bankr. D. Del. July 25, 2011). The new information only changes one aspect of those allegations. Instead of Kolin systematically overcharging SBC for the HD TVs, it is now understood that SBC was under-cost selling. This one difference does not change the outcome. Additionally, the Court previously described the circular wire transfers and the tooling invoices in Count II and the Trust points to no new facts that pertain specifically to the circular wire transfers and the tooling invoices.

As previously explained, both counts fail as a matter of law. As a threshold matter, the Court has held that California Financial Code §§ 952, 953 protect the Bank from liability because the Bank has no further duty to inquire into possible fraud so long as the persons drawing on the accounts are authorized to do so. [37] *See id.* at *9 (citing *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 541 (Cal. Ct. App. 1998). The Court stated that "the function of these statutes is to insulate banks from liability once funds are in an account and subject to the account holder's control, regardless of the source of the funds." *In re Syntax-Brillian Corp.*, 2011 WL 3101809, at *10. Further, the Court added that the "Bank's actions in documenting and making the loans and

---

[37] Although both statutes have been repealed, the California legislature re-enacted both statutes in largely identical text. *See* Cal. Fin. Code §§ 1450, 1451 (2011).

disbursing proceeds into the Debtors accounts did not harm the Debtors because the damages here flowed from the Debtors' own disbursal of funds to Kolin." *Id.* at *10 n.13. Therefore, the "newly discovered" fact that SBC was under-cost selling does not change the outcome of Counts I and II.

By Counts III, IV, V, and VI, the Trust alleges avoidance actions for actual fraudulent transfers under §§ 544 and 548(a)(1)(A) and constructively fraudulent transfers under §§ 544 and 548(a)(1)(B).[38] These counts are each predicated upon collapsing the transactions, and therefore, the Court addressed this argument as a threshold issue. The Court found that collapsing the various transactions was not warranted on these facts. The Court read the Complaint in the light most favorable to the Trust and found that it alleges:

> [N]o plausible set of facts under which the Bank actually or constructively knew of the allegedly fraudulent nature of the Kolin pricing and rebate scheme, the Tooling Invoices, or the SCHOT/OFE invoices. Moreover, the Complaint fails to plausibly allege facts or otherwise indicate what a reasonable inquiry would have shown or even what inquiries the Bank should have made. Because the Complaint fails to adequately allege that the Bank knew or should have known of the allegedly wrongful purpose of the many transactions outlined above, the Court finds that the series of transactions at issue cannot be collapsed into one transaction.

*In re Syntax-Brillian Corp.*, 2011 WL 3101809, at *12. The "newly discovered evidence" of under-cost selling does not change this outcome because it does not implicate the Bank in any actual or constructive knowledge of the Insider's scheme.[39] Further, the "newly discovered evidence" that the Kolin Invoices and SCHOT sales were

---

[38] By Count VII, the Trust seeks recovery of the avoided transfers pursuant to § 550.

[39] The Trust agrees that the fraud in this case does not involve a Ponzi scheme. Pl.'s Op. Br. at 20. As such, the analogy to case law dealing with actual knowledge of parties involved in such schemes is misplaced. As stated in the Court's previous opinion, the Trust cannot allege sufficient facts to show the Bank's actual knowledge or intent.

completely fake does not change the outcome. When the Court previously ruled, the Court explained the standard of review for a Rule 12(b)(6) motion in detail. The Court further read the allegations in the light most favorable to the Plaintiff. Thus, the Trust's previous allegations that the documents may have been fake and the Trust's statements now that the documents are entirely fake do not change the outcome. The lack of "new evidence" that directly implicates the Bank's actual or constructive knowledge leads the Court to hold that the "new evidence" would not have changed the outcome.[40] The Court reminds the parties that the relief requested is extraordinary relief and the Court finds that the Trust has not carried its "heavy burden." *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991). Therefore, for the reasons stated above, relief from order under Rule 60(b)(2) is denied.

## C. Application of Rule 60(b)(6)

The Trust alleges that relief is warranted because this case involved a highly complex, large-scale fraudulent scheme that was not detected by many professionals over the course of several years. The Trust also alleges that discovery obstacles relating to uncooperative key witnesses and Taiwan-United States relations warrant the relief requested. Finally, the Trust argues that its status as liquidating trustee and the minimal funding it has should be given consideration and taken together warrant the relief requested.

As previously explained, Rule 60(b)(6) is especially extraordinary relief and the movant bears a heavy burden. *See Bohus*, 950 F.2d at 930. On these facts and in light of the new discoveries, the Court declines to utilize its "reservoir of equitable power." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005).

---

[40] Additionally, there is no new evidence in relation to the Trust's "badges of fraud" argument for actual knowledge nor is there new evidence in regards to constructive fraudulent transfers. The Court reiterates that:

> Beyond the lack of credible allegations of actual knowledge, which is fatal to claims based upon actual fraud, the Court also notes that the constructive fraudulent transfer claims would also fail on the ground that the record demonstrates that reasonably equivalent value was received (in the form of loan proceeds) by the Debtors in connection with the various transactions.

*In re Syntax-Brillian Corp.*, 2011 WL 3101809, at *12 n.14.

First, the Trust has already fairly and accurately described the nature of this complex fraud and explained the mechanics of it. Relief is not warranted now because the precise mechanics, *i.e.*, the under-cost selling, and extent of the fraud are now known.[41]  Second, the Court is sympathetic to the difficulties in conducting effective discovery where foreign persons and entities are involved, but the Trust cites no authority and the Court does not agree that this is the type of extraordinary circumstances that warrant relief under 60(b)(6).  Third, the Court declines to draw a distinction in pleading requirements under Rule 60(b)(6) between a liquidating trustee and a regular plaintiff.  The Trust provides no case law for its proposition that a liquidating trustee should be held to a lesser standard or given the "benefit of the doubt" because of its status as liquidating trustee.  Further, the Trust was already given the benefit of the doubt in the previous opinion as it related to its factual allegations.  *See SB Liquidation Trust v. Preferred Bank (In re Syntax-Brillian Corp.)*, Ch. 11 Case No. 08-11407 (BLS), Adv. No. 10-51389, 2011 WL 3101809, at *12 (Bankr. D. Del. July 25, 2011) ("Here, the Complaint…read in the light most favorable to the Plaintiff….").  The Trust's allegations, accepted as true, failed to state a claim for which relief could be granted.  Similarly, the facts as alleged now still fail.

Finally, the Court does not find a "manifest injustice" that would be prevented by reopening this case.  *See Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 15 F. Supp. 2d 406, 409 (D. Del. 1998).  On these facts and for the reasons stated above, the extraordinary relief requested under Rule 60(b)(6) is denied.

## D. Rule 15 Analysis

Although the Court has limited jurisdiction in this proceeding and does not have jurisdiction to grant the Trust leave to amend, it is incumbent upon the Court to briefly address the Trust's request for leave to amend its Complaint.  Federal Rule of Civil Procedure 15, as made applicable to this adversary proceeding by Bankruptcy Rule 7015, states that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*  The Supreme Court held that:

---

[41] *See, e.g.*, *supra* note 26 and accompanying text (comparing the alleged $400 million in fake SCHOT sales in the FAC with around $300 million in the Complaint).

> In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc.-the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added). "Futility," as defined by the Third Circuit, means that "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). The Third Circuit applies the same standard for futility as it applies under Rule 12(b)(6). *Id.* Here, the Court already explained above that the "newly discovered evidence" would not have changed the result.[42] Thus, taking all of the allegations and new facts as true and viewing them in the light most favorable to the Trust, amending the Complaint would be futile.

## V. CONCLUSION

For the foregoing reasons, the Court finds that the movant has not carried its burden with respect to its Motion for relief from order under Rules 60(b)(2) and (b)(6). Therefore, the Motion is **DENIED**. An appropriate Order follows.

**BY THE COURT**:

Dated: January 15, 2013
Wilmington, Delaware

Brendan Linehan Shannon
United States Bankruptcy Judge

---

[42] *See supra* Part IV.B.2.